Jeffrey L. Fillerup, State Bar No. 120543
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582
Telephone No.: 415.356.4600
Fax No.: 415.356.4610
E-mail: jfillerup@luce.com

Attorneys for Defendants
Travelers Companies, Inc.,
St. Paul Mercury Insurance Company,
St. Paul Fire and Marine Insurance
Company, and St. Paul Travelers

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPITAL BUSINESS SERVICE, INC. AND STEWART J. BURCH, | Case No. |
| Plaintiff, | **NOTICE OF REMOVAL** |
| v. | **[28 USC § 1441(b)]** |
| TRAVELERS COMPANIES, INC., ST. PAUL MERCURY INSURANCE COMPANY, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, and ST. PAUL TRAVELERS, | |
| Defendants. | |

TO:  THE CLERK OF THE ABOVE-ENTITLED COURT

PLEASE TAKE NOTICE THAT pursuant to 28 USC § 1441(b), Defendants hereby

remove to this Court the State Court Action described below.

1.     On August 2, 2007 an action was commenced in the Superior Court for the State of

California, County of San Francisco, entitled CAPITAL BUSINESS SERVICE, INC. AND

STEWART J. BURCH, PLAINTIFFS V. TRAVELERS COMPANIES, INC., ST. PAUL

MERCURY INSURANCE COMPANY, ST. PAUL FIRE AND MARINE INSURANCE

COMPANY, and ST. PAUL TRAVELERS and DOES 1 to 10, inclusive, Case No. CGC-07-

1    465743 (the "State Court Action").  A copy of the Complaint in the State Court Action is attached

2    hereto as Exhibit "A."

3         2.    The Defendants in the State Court Action are  TRAVELERS COMPANIES, INC.,

4    ST. PAUL MERCURY INSURANCE COMPANY, ST. PAUL FIRE AND MARINE

5    INSURANCE COMPANY, and ST. PAUL TRAVELERS  (collectively "Defendants").  The first

6    date upon which Defendants received a copy of the said Complaint was sometime after August 2,

7    2007.

8         3.    Defendants are informed and believe that Plaintiff Capital Business Service Inc.,

9    was, and still is, a citizen of the State of California.  (See Complaint, Exhibit "A" at par. 1).

10   Defendants are informed and believe that Plaintiff Stewart J. Burch was, and still is, a citizen of

11   the State of California.

12        4.    Defendants TRAVELERS COMPANIES, INC., ST. PAUL MERCURY

13   INSURANCE COMPANY, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, and

14   ST. PAUL TRAVELERS were, at the time of filing this action, and still are, citizens of the State

15   of Minnesota.

16        5.    The matter in controversy exceeds $75,000, exclusive of interest and costs in that

17   Plaintiffs allege two causes of action alleging damages in excess of  $122,000.00. (See Complaint,

18   Exhibit "A" at par. 12)

19        6.    This action is a civil action of which this Court has original jurisdiction under 28

20   USC § 1332, and is one which may be removed to this Court by the Defendants pursuant to the

21   provisions of 28 USC § 1441(b) in that it is a civil action wherein Plaintiffs are citizens of the

22   State of California and Defendants are citizens of the State of Minnesota.

23        **WHEREFORE**, Defendants request that the State Court Action now pending against them

24   in the Superior Court of the State of California, County of San Francisco, and which is attached

25   hereto as Exhibit "A" be removed to this United States District Court for the Northern District of

26   California.

27   ///

28   ///

Case No.
NOTICE OF REMOVAL

1  DATED: August 23, 2007          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

2

3                                  By:

4                                     Jeffrey L. Fillerup
                                      Attorneys For Defendants
5                                     Travelers Companies, Inc.,
                                      St. Paul Mercury Insurance Company,
6                                     St. Paul Fire and Marine Insurance
                                      Company, and St. Paul Travelers
7

8

9  301015016.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    3

# EXHIBIT A

CASE MANAGEMENT CONFERENCE SET

JAN 2 5 2008 - 9ᵃᵐ AM

DEPARTMENT 212

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2007 AUG -2  PM 2: 31

GORDON PARK - LI. CLERK

BY: Deborah Steppe
DEPUTY CLERK

1  Steven C. Finley CSB# 074391
   HENNEFER, FINLEY & WOOD, LLP
2  425 California Street, 19th Floor
   San Francisco, CA 94104
3  Telephone: (415) 296-0111
   Facsimile: (415) 296-7111
4  Email: finley@finleydeaton.com

5  Attorneys for Plaintiffs Capital Business Service, Inc.
   and Stewart J. Burch

SUMMONS ISSUED

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

UNLIMITED JURISDICTION

CGC-07-465743

CAPITAL BUSINESS SERVICE, INC. and
STEWART J. BURCH,

        Plaintiffs,

    vs.

THE TRAVELERS COMPANIES, INC.,
formerly ST. PAUL MERCURY
INSURANCE COMPANY, ST. PAUL FIRE
AND MARINE INSURANCE COMPANY,
and ST. PAUL TRAVELERS, and DOES 1
through 10, inclusive,

        Defendants.

Case No.:

**COMPLAINT FOR DAMAGES**

Plaintiffs allege as follows:

**I.    PARTIES**

    1.    Plaintiff Capital Business Service, Inc. is a California corporation which at all

material times conducted business in Napa County, California, through its employees, as an

enrolled agent and tax preparer.

///

-1-
COMPLAINT FOR DAMAGES

2.       Plaintiff Stewart J. Burch is and was at all material times an officer and employee of Plaintiff Capital Business Service, Inc. and is a licensed enrolled agent and tax preparer.

3.       Defendant The Travelers Companies, Inc. ("Travelers") is a property and casualty insurer, which owns St. Paul Fire and Marine Insurance Company and/or St. Paul Mercury Insurance Company, (collectively "Defendants") and which at all material times was conducting business in every state of the United States including California, and in every county of the State of California, including San Francisco County.

4.       Defendant Travelers is liable for, or has assumed, the obligations of all insurance policies issued by or in the name of St. Paul Mercury Insurance Company.

5.       Does 1 through 10 are sued herein as fictitious Defendants and are alleged to have acted on behalf of and/or in the course and scope of their employment or agency on behalf of Defendants and are responsible and liable for any, all or some of the acts or omissions complained of herein. Plaintiff shall amend this Complaint to specifically identify a fictitious Defendant once his, her or its identity becomes known.

## II.    FACTS

6.       In or about May 1991, Plaintiff Capital Business Service, Inc. purchased Enrolled Agents Professional Liability Insurance through Wraith & Associates, Inc., an authorized agent of Defendants with limits of coverage of $100,000 per wrongful act and total limits of $200,000. Plaintiff renewed its Enrolled Agents Professional Liability Insurance on an annual basis, first increasing the policy limits to $200,000/$400,000 and in the year 2000, increasing the policy limits to $1,000,000 per wrongful act with total limits of $2,000,000.  At all material times Wraith & Associates, Inc., was Defendants' agent, and represented to Plaintiff that:

"Providing legal defense is a large part of a professional liability claim" and "Claims are often unusual and unpredictable" and "Please don't be caught unprotected".

HENNEFER, FINLEY & WOOD, LLP
ATTORNEYS AT LAW

1  Payment of defense costs was at all material times a material factor or inducement in Plaintiffs'

2  purchase of insurance.

3

4      7.      On or about May 23, 2001 St. Paul Mercury Insurance Company renewed

5  Plaintiffs' Enrolled Agents Professional Policy No. GL00622797 with policy limits of $1,000,000

6  for each wrongful act and a total limit of $2,000,000 in return for payment of a premium of $1,851

7  for the policy period between May 23, 2001 and May 23, 2002 ("the Policy").  A copy of the

8  Policy is attached to this Complaint as Exhibit A and incorporated herein by reference.

9      8.      Pursuant to the terms of the Policy, Defendants agreed to defend and indemnify the

10  Plaintiffs against claims made during the policy period for covered losses which resulted from the

11  performance of professional services and were caused by a wrongful act committed before the end

12  of the policy period.

13

14      9.      On June 6, 2001 Andrew K. Nielsen and Gudveig Nielsen ("the Nielsens") filed a

15  Complaint for Damages and other Relief against Plaintiffs in Napa County Superior Court, Action

16  No. 26-13768.  A copy of the Complaint for Damages is attached hereto as Exhibit B and

17  incorporated by reference.

18

19      10.     Among other allegations, the Complaint alleged that Plaintiffs, as Defendants in the

20  Complaint, were liable for professional negligence by virtue of the conduct alleged.  The Nielsens'

21  claim of professional negligence and resulting damages was directly covered by the Policy issued

22  by Defendants, and other claims in the Complaint were potentially covered under the Policy.  The

23  same set of facts were relevant to the defense of all claims made by the Complaint.

24

25      11.     Plaintiffs tendered the defense of the Complaint to St. Paul Mercury Insurance

26  Company ("St. Paul"), on or about June 13, 2001 and on February 18, 2002 Defendants issued a

27  reservation of rights letter, acknowledging the duty to defend the Plaintiffs under the Policy, but

28  refusing to pay for the cost of Plaintiffs' defense, other than to pay for 25% of legal fees incurred

-3-
COMPLAINT FOR DAMAGES

HENNEFER, FINLEY & WOOD, LLP
ATTORNEYS AT LAW

1   by Plaintiffs at the rate of $140 per hour and 25% of Plaintiffs' costs.  A copy of Defendants'

2   reservation of rights letter is attached hereto as Exhibit C and incorporated herein.  From February

3   18, 2002 until October 2006, when the litigation arising out of the Complaint was finally resolved,

4   Defendants continued to refuse and fail to pay for Plaintiffs' defense of the Complaint, other than

5

6   on the basis stated above and refused to renew Plaintiffs' professional liability insurance.

7         12.     As a proximate result, Plaintiffs paid and/or incurred unreimbursed legal fees and

8   costs in the vicinity of $122,000 for the defense of the Complaint.

9         13.     In order to make payment of their legal fees to defend the Complaint, Plaintiffs

10

11   were required to borrow money and incur interest damages.

12

13                        **FIRST CAUSE OF ACTION**

                            (Breach of Contract)

14

15         14.     Plaintiffs reallege and incorporate the allegations of Paragraphs 1 through 13 above.

16         15.     The insurance policy issued by Defendant to Plaintiffs constitutes a contract, one of

17   the terms of which is Defendants' agreement to defend its insured against a claim or suit for loss

18   covered by the agreement, or potentially covered by the agreement, and to pay all defense

19   expenses.

20

21         16.     Plaintiffs have performed the contract with Defendant by making payment of the

22   premium and by reporting the Complaint to Defendant promptly upon service of the Complaint

23   and tendering the defense of the Complaint to Defendant.

24         17.     Defendant has breached its contract with Plaintiffs by failing and refusing to defend

25   the Plaintiffs and pay for Plaintiffs' defense costs in accordance with the terms of the policy and

26   applicable law.

27

28   //

HENNEFER, FINLEY & WOOD, LLP
ATTORNEYS AT LAW

18.  As a proximate result of Defendants' breach of its contact, Plaintiffs have incurred damages according to proof.

## SECOND CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

19.  Plaintiffs realleges and incorporates the allegations of Paragraphs 1 through 13 above.

20.  Upon information and belief, Plaintiffs allege that at or about the time of the issuance of its reservation of rights letter in February 2002, and during the period of the defense of the Complaint, it was Defendants' policy to refuse to provide its insureds with a defense and to pay all defense expenses for claims against its insureds where the claim involved "mixed claims" consisting of claims which were clearly covered, claims which were potentially covered and claims which were not covered, and to unfairly and arbitrarily allocate its contribution to defense expenses.

21.  There is implied in every insurance contract a covenant of good faith and fair dealing which Defendants have violated by allocating defense costs arbitrarily and unreasonably and without proper cause and by their bad faith refusal to defend Plaintiffs in accordance with the terms of the Policy and the requirements of law.

22.  Plaintiffs have incurred, and will continue to incur, attorneys fees and costs in the prosecution of this bad faith action.

23.  Defendants have acted with malice, fraud and oppression towards Plaintiffs, entitling Plaintiffs to an award of punitive damages.

//

//

//

HENNEFER, FINLEY & WOOD, LLP
ATTORNEYS AT LAW

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.    Damages for breach of contract and breach of the covenant of good faith and fair dealing according to proof;

2.    Punitive damages;

3.    Attorneys fees and costs;

4.    Such other and further relief as the Court may deem just and proper.

Dated: August 2, 2007

RESPECTFULLY SUBMITTED,

HENNEFER, FINLEY & WOOD, LLP

By _____

Steven C. Finley, Attorneys for Plaintiffs Capital Business Service, Inc. and Stewart J. Burch

EXHIBIT A

**POLICY INFORMATION**                                                  TheStPaul

**THIS IS NOT A BILL.**

YOUR POLICY IS DIRECTLY BILLED. IF THIS IS A POLICY CHANGE,
THE ADDITIONAL OR RETURN PREMIUM WILL BE SHOWN ON FUTURE
INSTALLMENT BILLINGS. IF ALL INSTALLMENTS HAVE BEEN BILLED,
THE PREMIUM CHANGE WILL BE BILLED OR CREDITED PROMPTLY.
A BILL WILL BE SENT TO:
THE INSURED

---

**Company:** ST. PAUL MERCURY INSURANCE COMPANY

---

I
N                                          Policy Inception/Effective Date: 05/23/01
S                                          Policy Number: GLO0622797
U    CAPITAL BUSINESS SERVICE, INC.        Agency Number: 0402603
R    P. O. BOX 2088
E    NAPA CA 94558                         Transaction Type:
D                                          RENEWAL OF POLICY
                                           Transaction number: 001
                                           Processing Date: 02/17/01  08:17

---

A    PLACER INSURANCE AGENCY
G    P.O. BOX 619052
E    ROSEVILLE CA 95661-9052
N
T

---

| Policy Number | Description | Amount | Surtax/ Surcharge |
|---|---|---|---|
| GLO0622797 | PROFESSIONAL LIABILITY POLICY | $1,851.00 | |

THE PREMIUM SHOWN DOES NOT INCLUDE A PREMIUM PAYMENT PLAN SERVICE CHARGE.
IF YOU SELECTED A PREMIUM PAYMENT PLAN YOUR PAYMENT SCHEDULE/BILL WILL SHOW THIS
CHARGE.

THIS POLICY IS ON A FOUR PAY PAYMENT PLAN.
A PAYMENT SCHEDULE/BILL WILL FOLLOW SHORTLY.

---

40775 Ed.12-90 Printed in U.S.A.                                      Page 1

INSURED COPY

Case 3:07-cv-04355-JCS     Document 1     Filed 08/23/2007     Page 13 of 62

The St.Paul

The St.Paul

## NOTICE OF COVERAGE CHANGE
## ENROLLED AGENTS PROFESSIONAL LIABILITY PROTECTION – CLAIMS-MADE

**Important note:** Please read your policy carefully. We've made certain changes in coverage from your previous policy. We've also made certain wording and formatting changes for the purpose of clarification or improved readability.

The significant coverage, wording, and formatting changes in your Specialized Business Errors And Omissions Liability Protection - Claims-Made are briefly described in this notice so that you can more easily compare your new policy to your old policy.

We may have made other changes too. If we did, we've made them with endorsements which are part of your policy. Please read all endorsements carefully.

---

Your Specialized Business Errors And Omissions Liability Protection - Claims-Made is now titled Enrolled Agents Or Brokers Professional Liability Protection - Claims-Made.

### What This Agreement Covers

The following definitions are added:
- *Damages;*
- *Professional services;*
- *Enrolled agent, bookkeeper, or tax preparer;*
- *Notary public;*
- *Advertising injury offense;*
- *Personal injury offense; and*
- *Agreement.*

The definition of Wrongful act includes personal injury offense and advertising injury offense.

**Right and duty to defend a protected person.** This section replaces the Defending lawsuits section. We:
- added a condition providing us the right to negotiate a settlement within the deductible and limits of coverage;
- added a condition that requires your written consent prior to the settlement of any claim or suit;
- added a definition for claim; and
- revised the definition of suit is changed to include alternative dispute resolution proceedings.

**Right to appeal a judgment against a protected person.** We've added this section which describes our right to appeal a judgment.

**Expenses incurred by protected persons.** This section replaces the Expenses related to defense section. The limit of this payment is increased up to $500 per day. A total limit of $10,000 applies in a policy year.

We've added a definition for policy year.

NP026 Ed. 9-00 Printed in U.S.A.        -1        001012

**Additional payments.** This section replaces the Additional Benefits section. We've added the following sections:

- *Our expenses.*
- *Taxed costs.*

## When This Agreement Covers

This section replaces the When A Claim Is Covered section. We've added the following sections:

- **During this agreement or the limited reporting period.**
- **When we consider a claim or suit to be first made or brought.**
- **When we consider a claim or suit to be first reported to us.**
- **When we consider a wrongful act to be first reported to us.**
- **When the limited reporting period will apply.**
- **How the limited reporting period applies.**
- **When and how an extended reporting period can be added**
- **How the extended reporting period applies.**
- **What we'll charge for the extended reporting period.**

## Where This Agreement Covers

This section replaces the Where We Cover section.

## Who Is Protected Under This Agreement

We've added the following sections:

- **Independent contractors.** We've added independent contractors as protected persons.
- **Partner, director, executive officer, or employees who have left your firm.** We've added partner, director, officer who has left the insured's firm as a protected person.
- **Legal representatives of certain protected persons.** We've added legal representatives of a protected person who has died or become mentally incompetent as a protected person.
- **Corporation or other organization.** We've added the following definitions:
  - *Other organization.*
  - *Executive officer.*

**Employees.** Employees now specifically include those employed on a temporary basis.

## Limits Of Coverage

We've added the following sections:

- **How the limits of coverage apply to an extension of the policy period.**
- **How the limits of coverage apply to the limited and extended reporting periods.**

## Exclusions – What This Agreement Won't Cover

This section replaces the Exclusions – What We Won't Cover section. We've added the following exclusions:

- **Check signing.**
- **Computer hardware and software development.**

001013

- Fiduciary activities.
- Intellectual property.
- Investment of funds.
- Known wrongful acts.
- Patent and trade secrets.
- Specified services.

The following exclusions no longer apply:
- Libel and slander.
- Unlawful profits.
- Handling of funds.
- Employee Retirement Income Security Act.

The following exclusions are changed:
- Criminal, dishonest, fraudulent, or intentionally wrongful acts.  This exclusion replaces the Dishonest acts exclusion.
- Injury or damage.  This exclusion replaces the Bodily injury or property damage exclusion.

## Other Insurance

We've added the following sections:
- Other primary insurance.
- Excess insurance.
- Methods of sharing.

---

**Special Notice for Policies Issued or Delivered in the State of New York:**

In accordance with New York Statute Section 3426(g), you are entitled to loss information upon written request, which we will furnish within 20 days of receipt of such request.

**Special Notice for Policies Issued or Delivered in the State of Wisconsin:**

In accordance with Wisconsin Statute Section 631.36(5)(a), if this notice is mailed or delivered to you within 60 days of the renewal date of the policy, you may elect to cancel the renewal policy at any time during a 60-day period which begins on the date this notice is mailed or delivered.

**Special Notice for Property Policies Issued or Delivered in the State of Missouri:**

In accordance with Missouri Regulation 20 CSR 500-1.100(3)(A), this additional information is being provided to you.  If you wish to secure coverages from another insurance carrier, contact your agent or broker immediately.  You or your agent or broker may also apply to the Missouri Property Insurance Placement Facility for insurance coverages.  Application may be made by mail or in person to the following address:

> Missouri Property Insurance Placement Facility
> 906 Olive Street, Suite 1000
> St. Louis, Missouri  63101
> Phone (314) 421-0170

Any excess premium must be refunded within thirty (30) days.

001014

**Special Notice for Liability Policies Issued or Delivered In the State or Commonwealth of Virginia:**

In accordance with Virginia Statute Section 38.2-231 (C) (5), you are entitled to request In writing, within fifteen days of receipt of this notice, that the Commissioner of Insurance review our action(s).

---

This notice does not replace or add to the terms of your policy.   You should contact your agent If you have any question about this notice or any of the changes described above.

---

001015

## RENEWAL CERTIFICATE

The St.Paul

Please insert this Renewal Certificate with the
rest of your policy.

In return for your premium, your policy is
renewed to the date shown on this certificate.

We, us, our and ours mean the insurance
company named on the Introduction.

The words you, your and yours mean the
insured named here:

CAPITAL BUSINESS SERVICE, INC.
P. O. BOX 2088
NAPA CA 94558

Important. Please refer to your Coverage
Summaries that are attached for any changes in
your policy. You will also receive the benefit
of any changes we've made in our standard
policy forms that broaden or extend your
coverage without increasing your premium.

Policy Number: GL00622797

Is Renewed From: 05/23/01

To: 05/23/02

Premium:          $1,851.00

Our authorized representative is:
0402603
PLACER INSURANCE AGENCY
P.O. BOX 619052
ROSEVILLE CA 95661-9052

Authorized Representative          Date

_President_

Paul D. Ziccarelli          _Secretary_

Processing Date 02/17/01   08:17   001

40774 Ed.9-86 Printed in U.S.A.
©St.Paul Fire and Marine Insurance Co.1986

Renewal Certificate

Page   1

The St Paul

©St.Paul Fire and Marine Insurance Co. 1986

001017

**POLICY FORM LIST**

The St. Paul

Here's a list of all forms included in your
policy, on the date shown below. These forms
are listed in the same order as they appear in
your policy.

| Title | Form Number | Edition Date |
|---|---|---|
| Renewal Certificate | 40774 | 09-86 |
|    Policy Form List | 40705 | 05-84 |
| General Rules | 40701 | 09-96 |
|    California Required Endorsement | 40769 | 10-99 |
| What To Do If You Have A Loss | 40814 | 11-91 |
| Enrolled Agents Professional Liability Protection –<br>   Claims-Made Coverage Summary | P0363 | 09-00 |
| Enrolled Agents Professional Liability Protection –<br>   Claims-Made | P0361 | 09-00 |

PLEASE NOTE: This is a renewal of your policy. Some of the forms that make up your
policy may not be attached. Only agreements or endorsements that are new or have
been changed are attached. Please refer to your previous policy for any forms
listed here that are not attached.

---

| | | |
|---|---|---|
| Name of Insured | Policy Number GL00622797 | Effective Date 05/23/01 |
| CAPITAL BUSINESS SERVICE, INC. | Processing Date 02/17/01 | 08:17  001 |

40705 Ed.5-84 Printed in U.S.A.
©St.Paul Fire and Marine Insurance Co.1995

Form List

001016

Page  1

The St Paul

©St.Paul Fire and Marine Insurance Co.1995

001010

## ENROLLED AGENTS PROFESSIONAL LIABILITY PROTECTION – CLAIMS-MADE COVERAGE SUMMARY

The St.Paul

This Coverage Summary shows the limits of coverage, deductible, and extended reporting period options that apply to your Enrolled Agents Professional Liability Protection – Claims-Made.

**Limits Of Coverage:**

| | |
|---|---|
| Each wrongful act | $1,000,000 |
| Total limit | $2,000,000 |

**Deductible**

| | |
|---|---|
| Each wrongful act | $1,000 |

**Extended Reporting Period Option:**

$4,165.00 for an unlimited time period

---

Name of Insured
CAPITAL BUSINESS SERVICE, INC.

Policy Number GL00622797

Effective Date 05/23/01
Processing Date 02/17/01  08:17  001

P0363 Ed. 9-00 Printed in U.S.A.
©St.Paul Fire and Marine Insurance Co. 2000 All Rights Reserved

Liability Coverage

001020
Page 1 of 1

# ENROLLED AGENTS PROFESSIONAL LIABILITY PROTECTION – CLAIMS-MADE

The St.Paul

This insuring agreement provides professional liability protection for professional services performed by or for you. There are, of course, limitations and exclusions that apply to that protection. As a result, all protected persons should read this agreement carefully to determine the extent of coverage.

**Important note.** This is a claims-made insuring agreement. To be covered, a claim or suit must be first made or brought, and reported to us, while this agreement is in effect, or during a reporting period if one applies. This agreement should be read carefully, especially the What This Agreement Covers, When This Agreement Covers, and Limits Of Coverage sections.

## Table of Contents

| | Page |
|---|---|
| **What This Agreement Covers** | 1 |
| Enrolled agents liability. | 1 |
| Right and duty to defend a protected person. | 2 |
| Right to appeal a judgment against a protected person. | 3 |
| Additional payments. | 3 |
| **When This Agreement Covers** | 4 |
| During this agreement or the limited reporting period. | 4 |
| When we consider a claim or suit to be first made or brought. | 4 |
| When we consider a claim or suit to be first reported to us. | 4 |
| When we consider a wrongful act to be first reported to us. | 4 |
| When the limited reporting period will apply. | 4 |
| How the limited reporting period applies. | 4 |
| When and how an extended reporting period can be added. | 4 |
| How the extended reporting period applies. | 5 |
| What we'll charge for the extended reporting period. | 5 |
| **Where This Agreement Covers** | 5 |
| **Who Is Protected Under This Agreement** | 5 |
| Individual. | 5 |
| Partnership or joint venture. | 5 |
| Limited liability company. | 5 |
| Corporation or other organization. | 5 |
| Employees. | 5 |
| Independent contractors. | 5 |
| Partners, directors, executive officers, or employees who have left your firm. | 6 |
| Legal representatives of certain protected persons. | 6 |
| Separation of protected persons. | 6 |
| **Limits Of Coverage** | 6 |
| Each wrongful act limit. | 6 |
| Total limit. | 6 |
| How the limits of coverage apply to an extension of the policy period. | 6 |
| How the limits of coverage apply to the limited and extended reporting periods. | 6 |
| **Deductibles** | 6 |
| Each wrongful act deductible. | 6 |
| **Exclusions – What This Agreement Won't Cover** | 7 |
| Check signing. | 7 |
| Contract liability. | 7 |
| Criminal, dishonest, fraudulent, or intentionally wrongful acts or omissions. | 7 |
| Computer hardware and software development. | 7 |
| Fiduciary activities. | 7 |
| Injury or damage. | 7 |
| Intellectual property. | 7 |
| Investment of funds. | 7 |
| Known wrongful acts. | 7 |
| Patent and trade secrets. | 7 |
| Securities. | 7 |
| Specified services. | 7 |
| **Other Insurance** | 8 |
| Other primary insurance. | 8 |
| Excess insurance. | 8 |
| Methods of sharing. | 8 |

## What This Agreement Covers

**Enrolled agents liability.** We'll pay amounts any protected person is legally required to pay as damages for covered loss that:

• results from the performance of professional services; and

• is caused by a wrongful act committed before this agreement ends.

001021

™ St Paul

*Protected person* means any person or organization who qualifies as a protected person under the Who Is Protected Under This Agreement section.

*Damages* means judgments, awards, and settlements. It does not include civil or criminal fines, sanctions, penalties, or forfeitures.

*Professional services* means those professional services performed by or on behalf of a protected person in any of the following capacities:

• Enrolled agent, bookkeeper, or tax preparer.

• Notary public.

*Enrolled agent, bookkeeper, or tax preparer* means a protected person who:

• provides tax advice;

• prepares tax returns;

• files tax returns;

• provides tax proceeding representation;

• compiles, prepares, or assembles financial data statements in accordance with:

   • Generally Accepted Accounting Principles;

   • Generally Accepted Tax Accounting Principles;

   • Internal Revenue Service Tax Code Guidelines; or

   • Other Comprehensive Basis of Accounting;

• assists in the maintenance and preparation of financial records, including the posting of receipts, disbursements, and adjustments in the accounting records;

• reconciles accounting activity to subsidiary records;

• reviews documents for accuracy and coding;

• maintains fixed asset records;

• maintains payroll registers, records employees earnings, and prepares payroll checks for your clients;

• reviews invoices or statements of account on behalf of your clients and prepares for the payment of such items with client funds, but not including the signing of checks; or

• services, consults, orders, delivers, installs, and trains in the use of computer hardware, software, and related supplies for your clients.

*Notary public* means attesting to the authenticity of signatures by a notary public only when the signatory physically appears before the protected person during the attestation.

*Wrongful act* means an error, omission, negligent act, advertising injury, or personal injury.

*Advertising injury* means injury that's caused by the unauthorized use of any advertising idea, material, slogan, style or title of others in your advertising.

*Personal injury* means injury that's caused by any of the following offenses:

• False arrest, detention or imprisonment.

• Malicious prosecution.

• Wrongful entry into, or wrongful eviction from a room, dwelling, or premises that a person occupies.

• Invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies.

• Libel or slander.

• Making known to any person or organization written or spoken material that disparages the products, work or completed work of others.

• Making known to any person or organization written or spoken material that violates a person's right of privacy.

*Agreement* means this insuring agreement which is in effect for the policy period shown in the Introduction.

~~Right and duty to defend a protected person.~~ We'll have the right and duty to defend any protected person against a claim or suit for loss covered by this agreement. We'll have such right and duty even if all of the allegations of the claim or suit are groundless, false, or fraudulent. But we won't have a duty to perform other acts or services.

We'll have the right to investigate any claim or suit to the extent that we believe is proper. We'll also have the right to settle any claim or suit within:

• any applicable deductible; or

001022

©St.Paul Fire and Marine Insurance Co. 2000 All Rights Reserved

The St.Paul

- the available limits of coverage.

Our duty to defend protected persons ends when we have used up the limits of coverage that apply with the payment of judgments or settlements.

However, we won't agree to the final settlement of any claim or suit without your written consent. But if you refuse to give us your consent, we won't pay more than we would have paid had you consented to the proposed settlement

*Claim* means a demand that seeks monetary damages.

*Suit* means a civil proceeding that seeks monetary damages. It includes:

- an arbitration proceeding for such monetary damages to which the protected person must submit, or submits with our consent; and

- any other alternative dispute resolution proceeding for such monetary damages to which the protected person submits with our consent.

**Right to appeal a judgment against a protected person.** We'll have the right to appeal a judgment awarded in a suit for any wrongful act covered by this agreement if:

- we defend a protected person against the suit; and

- the judgment is awarded against that protected person.

If we appeal such a judgment, we'll pay all expenses which result directly from that appeal, including postjudgment interest and cost of appeal bonds. Such appeal expenses are in addition to the limits of coverage. However, the results of an appeal won't change the limits of coverage that apply under this agreement.

**Additional payments.** We'll have the duty to make only the additional payments shown below in connection with any claim or suit under this agreement against a protected person when we:

- investigate or settle the claim or suit; or

- defend the protected person against the claim or suit.

These payments are in addition to the limits of coverage. Also, no deductible applies to these additional payments.

Our duty to make additional payments ends when we have used up the limits of coverage that apply with the payment of judgments or settlements.

1. *Bonds to release property.* We'll pay the cost of bonds to release property that's being used to secure a legal obligation. However, we don't have to furnish such bonds.

2. *Defense expenses.* We'll pay all defense expenses.

   *Defense expenses* means all fees, costs and expenses that result directly from the investigation, adjustment, settlement, defense or appeal of a specific claim or suit. However, defense expenses do not include legal fees charged or incurred by the protected person without our consent.

3. *Expenses incurred by protected persons.* We'll pay all reasonable expenses that any protected person incurs at our request while helping us investigate or settle or defend a protected person against a claim or suit. However, we won't pay more than $500 per day for earnings actually lost by a protected person because of time taken off work, and we won't pay more than a total of $10,000 for all such expenses incurred by all protected persons in a policy year. We have no duty to pay any other expenses incurred by any protected person.

*Policy year* means the policy period shown in the introduction, or the period of time this agreement is in effect, whichever is less. But when that period is longer than one year, each annual period will be a separate policy year and a separate agreement.

4. *Our expenses.* We'll pay all expenses we incur.

5. *Post-judgment interest.* We'll pay all interest that accumulates on that part of a judgment for which we make a payment from the date of the judgment to the date we pay, or deposit in court,

---

001023

The St.Paul

the amount of coverage that applies to the judgment.

6. *Prejudgment interest.* We'll pay prejudgment interest awarded against the protected person on that part of a judgment we pay. We will not pay prejudgment interest that accumulates after the date we make a settlement offer to pay the available limit of coverage.

7. *Taxed costs.* We'll pay all costs taxed against any protected person in a suit.

## When This Agreement Covers

**During this agreement or the limited reporting period.** We'll apply this agreement to claims or suits for covered loss only when they're:

- first made or brought against a protected person while this agreement is in effect; and

- first reported to us while this agreement is in effect, or during the limited reporting period, if it applies.

We'll also apply this agreement to wrongful acts first reported to us while this agreement is in effect, or during the limited reporting period if it applies.

*Limited reporting period* means the 12 months, starting with the ending date of the policy year, during which claims or suits for a covered loss, or wrongful acts, may be reported to us.

**When we consider a claim or suit to be first made or brought.** We'll consider a claim or suit for covered loss to be first made or brought against a protected person on the date that any protected person first receives written notice of that claim or suit.

We'll also consider all claims or suits for covered loss caused by a wrongful act, or a series of related wrongful acts, to have been made or brought on the date that the first of those claims or suits is first made or brought.

*Series of related wrongful acts* means two or more wrongful acts, including repeated or continuous wrongful acts, that are directly or indirectly related to the same loss.

**When we consider a claim or suit to be first reported to us.** We'll consider a claim or suit for covered loss to be first reported to us on the date that we first receive written notice from any protected person of a claim or suit made or brought against a protected person.

**When we consider a wrongful act to be first reported to us.** We'll consider a covered wrongful act to be first reported to us on the date that we first receive written notice of a wrongful act from any protected person. However, we won't accept such notice unless it also describes what loss may result from the wrongful act.

**When the limited reporting period will apply.** The limited reporting period will automatically apply at the end of the policy year, without an additional premium.

However, the limited reporting period won't apply to claims or suits or wrongful acts if other insurance you buy:

- applies to them; or
- would have applied to them but won't because its limits of coverage have been used up.

**How the limited reporting period applies.** The limited reporting period doesn't extend the time this agreement is in effect. As a result, we'll consider any claim or suit, or wrongful act, first reported to us during the limited reporting period to have been reported to us on the ending date of the policy year to which the limited reporting period applies.

**When and how an extended reporting period can be added.** If this agreement is terminated or changed, an extended reporting period can be added with an extended reporting period endorsement.

However, we won't issue an extended reporting period endorsement unless we receive a written request for it within 60 days after this agreement is terminated or changed.

In addition, the endorsement won't take effect unless:

- your earned premium for this agreement is paid in full; and
- the additional premium for the extended reporting period is paid when due.

©St.Paul Fire and Marine Insurance Co. 2000 All Rights Reserved

001024

The St Paul

Once the endorsement takes effect, it can't be canceled by you or by us.

*Terminated or changed* means:

- any cancellation or nonrenewal of this agreement by you or by us;
- any decrease in the limit of coverage;
- any increase in the deductible or self-insured retention;
- any addition of a new limitation or exclusion; or
- any other change that reduces coverage.

*Extended reporting period* means the unlimited time period purchased by you, starting with the ending date of this agreement during which claims or suits for covered loss, or wrongful acts, may be reported to us.

**How the extended reporting period applies.** The extended reporting period replaces the limited reporting period. Also, the extended reporting period doesn't extend the time that this agreement is in effect. As a result, we'll consider any claim or suit, or wrongful act, reported to us during the extended reporting period to have been first reported to us on the ending date of this agreement.

In addition, the extended reporting period will cause us to apply this agreement as excess insurance over certain other insurance. We explain when and how we'll do so in the Other primary insurance section and Excess insurance section.

**What we'll charge for the extended reporting period.** The premium charge for the extended reporting period option is shown in the Coverage Summary.

## Where This Agreement Covers

We'll defend claims and suits, and pay judgments and settlements, for covered loss that's caused by a wrongful act committed anywhere in the world. But only if the claim or suit is brought in the United States of America, its territories or possessions, Puerto Rico, or Canada.

## Who Is Protected Under This Agreement

**Individual.** If you are shown in the Introduction as the named insured and an individual, you and your spouse are protected persons only for professional services performed for a business of which you are the sole owner.

**Partnership or joint venture.** If you are shown in the Introduction as a named insured and a partnership or joint venture, you are a protected person. Your partners or co-venturers, and their spouses, are protected persons only for professional services performed by or for you.

**Limited liability company.** If you are shown in the Introduction as a named insured and a limited liability company, you are a protected person. Your members are protected persons only for performed professional services. And your managers are protected persons only for their duties as your managers.

**Corporation or other organization.** If you are shown in the Introduction as a named insured and a corporation or an other organization, you are a protected person. Your directors and executive officers are protected persons only for the conduct of your professional services. And your stockholders and former stockholders are protected persons only for their liability as your stockholders.

*Other organization* means an organization other than a corporation, partnership, joint venture, or a limited liability company.

*Executive officer* means any person holding an officer position created by the charter, constitution, by-laws, or other similar governing document of a corporation or other organization.

**Employees.** Your employees, including temporary employees, are protected persons only for work performed within the scope of their employment by you.

**Independent contractors.** Independent contractors you hire are protected persons only for work performed within the scope of their duties for you.

001025

The St.Paul

Partners, directors, executive officers, or employees who have left your firm. Any partner, director, or executive officer who has left your firm is a protected person, but only for professional services that were performed for you.

Any employee who has left your firm is a protected person, but only for work performed within the scope of their employment by you.

Legal representatives of certain protected persons. Any legal representative of a protected person who has died or become mentally incompetent is a protected person only for the rights and duties of that deceased or mentally incompetent protected person under this agreement.

Separation of protected persons. We'll apply this agreement separately to each protected person.

However, the limits of coverage shown in the Coverage Summary are shared by all protected persons. We explain how in the Limits Of Coverage section.

Also, any right or duty specifically assigned to the first named insured remain unchanged. We explain those rights and duties in the General Rules, which is a part of your policy.

## Limits Of Coverage

The limits shown in the Coverage Summary and the information contained in this section fix the most we'll pay as damages, regardless of the number of:

* protected persons;
* claims made or suits brought; or
* persons or organizations making claims or bringing suits.

Each wrongful act limit. This is the most we'll pay for all covered loss that is caused by any one wrongful act or series of related wrongful acts.

Total limit. This is the most we'll pay for the combined total of all claims and suits for covered loss that are first made or brought, and reported to us, in a policy year.

How the limits of coverage apply to an extension of the policy period. If the policy period shown in the Introduction is extended for less than 12 months, we'll consider each extended period to be a part of the last policy year. For example:

*Your policy period is for one year. During the policy year you request a three month extension. We agree. As a result, your policy year becomes 15 months. It will be subject to the same limits of coverage that applied when the policy year was 12 months.*

How the limits of coverage apply to the limited and extended reporting periods. The limits of coverage that apply on the ending date of the policy year aren't renewed or increased for claims or suits for covered loss first reported to us during the limited reporting period.

However, if the extended reporting period is added, the Total limit that applies on the ending date of this agreement is renewed in full. But it will apply only to those claims and suits for covered loss that are first reported to us during the extended reporting period.

## Deductibles

The deductible shown in the Coverage Summary and the information contained in this section fix the amount of damages that you'll be responsible for paying.

The deductible won't apply to coverage provided in the Additional Payments section of this agreement.

We will pay all or part of the deductible for you, unless we agree to do otherwise. When we do make payment, you agree to repay us promptly after we notify you of the payment.

Each wrongful act deductible. You'll be responsible for the amount of damages within this deductible for all covered loss caused by any one wrongful act or series of related wrongful acts.

©St.Paul Fire and Marine Insurance Co. 2000 All Rights Reserved

001026

The St.Paul

## Exclusions – What This Agreement Won't Cover

**Check signing.** We won't cover loss that results from any protected person's signature on any check, draft, or similar negotiable instrument.

**Contract liability.** We won't cover loss for which the protected person assumed liability under any contract.

However, we won't apply this exclusion to amounts that the protected person would be legally required to pay without the contract.

**Criminal, dishonest, fraudulent, or intentionally wrongful acts or omissions.** We won't cover loss that results from any criminal, dishonest, fraudulent, or intentionally wrongful act or omission committed by any protected person.

**Computer hardware and software development.** We won't cover loss that results from developing any computer hardware, software, or related supplies.

**Fiduciary activities.** We won't cover loss that results from any protected person's activities as a fiduciary.

*Fiduciary* means serving as a trustee, conservator, executor, guardian, or receiver.

**Injury or damage.** We won't cover:
* bodily injury; or
* property damage.

*Bodily injury* means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness, or disease:
* Mental anguish, injury, or illness.
* Emotional distress.
* Care, loss of services, or death.

*Property damage* means:
* physical damage to tangible property of others, including all resulting loss of use of that property; or
* loss of use of tangible property of others that isn't physically damaged.

**Intellectual property.** We won't cover loss that results from any actual or alleged infringement or violation of any:
* copyright;
* trade dress;
* trade name;
* trademark; or
* other intellectual property rights or laws.

**Investment of funds.** We won't cover loss that results from the failure of any investment to perform as expected or as represented.

**Known wrongful acts.** We won't cover loss that results from any wrongful act any protected person:
* knew about before the beginning date of this agreement; and
* could reasonably foresee would result in a claim or suit being made or brought.

**Patent and trade secrets.** We won't cover loss that results from any actual or alleged infringement of any:
* patent; or
* trade secret.

**Securities.** We won't cover loss that results from the sale of securities or any violation of:
* The Investment Company Act of 1940, as amended;
* The Securities Act of 1933, as amended;
* The Securities Exchange Act of 1934, as amended;
* any state Blue Sky or Securities law; or
* any similar state of federal statute or regulation.

**Specified services.** We won't cover loss that results from:
* the preparation, analysis, or verification of any audited financial statement; or
* services performed by or on behalf of any protected person in their capacity as an attorney; or
* the preparation of financial review statements.

001027

The StPaul

## Other Insurance

This agreement is primary insurance. If there is any other valid and collectable insurance for loss covered by this agreement, the following applies in connection with that other insurance.

**Other primary insurance.** When there is other primary insurance, we'll share with that insurance the amounts you're legally required to pay as damages for loss covered by this agreement. We'll do so with one of the following methods of sharing described in the Methods of sharing section.

However, if the extended reporting period applies, we'll apply this agreement as excess insurance over that part of any other insurance that:

- is in effect during the extended reporting period; and
- provides coverage for claims or suits for covered loss covered by this agreement that are first made or brought, and reported to us, during the extended reporting period.

We explain how we'll apply this agreement as excess insurance in the Excess Insurance section.

**Excess insurance.** When this agreement is excess insurance, we won't have a duty to defend the protected person against the part or parts of any claim or suit for which any other insurer has the duty to defend the protected person.

However, we'll defend the protected person against a claim or suit for loss covered by this agreement if no other insurer will do so. In return, we'll require that we be given all of the protected person's rights against each such insurer.

Also, we'll pay only the amount of damages that are in excess of:

- the total amount that all such other insurance would pay if this agreement didn't exist; and
- the total of all deductible and self-insured amounts under all such other insurance.

However, we'll share such excess damages with any other insurance that:

- isn't described in the Other primary insurance section; and
- wasn't bought specifically to apply in excess of the limits of coverage shown in the Coverage Summary.

But we won't pay more than the limits of coverage that apply under this agreement.

**Methods of sharing.** We'll use one of the following methods of sharing described below:

*Contribution by equal shares.* If all the other insurance permits contribution by equal shares, we'll share the damages equally. But we won't pay more than the limits of coverage that apply under this agreement. If any policy reaches its limits before the entire amount of damages is paid, the remaining policies will share the balance equally until their limits have been used up or the amount of the damages is paid in full. For example:

*You are required by a court to pay damages of $10,000,000. Besides this agreement, two other policies apply to the judgment. The limit of this agreement is $5,000,000. Policy B has a $1,000,000 limit and Policy C's limit is $3,000,000.*

*First, $1,000,000 is subtracted from each policy's limit because that is the lowest limit provided by any of the three policies. The result: Policy B's limit is used up; the balance due on the judgment is $7,000,000; $4,000,000 remains of this agreement's limit; and the unused portion of Policy C's limit equals $2,000,000.*

*Next, $2,000,000 is subtracted from the limit on this agreement and policy C because that amount equals the smallest limit remaining on either policy after the initial $1,000,000 payment. The result: Policy C's limit is used up; the balance due on the judgment is now $3,000,000; and this agreement has $2,000,000 of its limit remaining.*

*Finally, the rest of the limit on this agreement is paid. The result: this agreement's limit is used up; the balance due on the judgment is now $1,000,000, that you must pay; and the total paid under each policy is: $5,000,000 this*

©St.Paul Fire and Marine Insurance Co. 2000 All Rights Reserved

001028

**EXHIBIT B**

6/5/01

1  John S. Siamas (State Bar No. 49061)
   CROSBY, HEAFEY, ROACH & MAY
2  Professional Corporation
   Two Embarcadero Center, Suite 2000
3  San Francisco, CA  94111

4  Mailing Address:
   P.O. Box 7936
5  San Francisco, CA  94120-7936

6  Telephone:   (415) 543-8700
   Facsimile:   (415) 391-8269
7

8  Attorneys for Plaintiffs
   Andrew K. Nielsen and Gudveig Nielsen

9

**ENDORSED**

JUN 0 6 2001

Clerk of the Napa Superior Court
By: _____ S. PETTY _____
              Deputy

10          SUPERIOR COURT OF CALIFORNIA - COUNTY OF NAPA

11

12  ANDREW K. NIELSEN and GUDVEIG      No. **26-13768**
    NIELSEN, husband and wife,
13                                     COMPLAINT FOR DAMAGES AND
              Plaintiffs,              OTHER RELIEF
14
         vs.
15
    STEWART J. BURCH, an individual;
16  CAPITAL BUSINESS SERVICE, INC.,
    a California corporation;
17  BORDEAUX LIMOUSINE SERVICE,
    a California corporation; TRACY
18  VISHER, an individual; and DOES
    ONE through TWENTY, inclusive,
19
              Defendants.
20

21

22

23          Plaintiffs, Andrew K. Nielsen ("Andrew Nielsen") and Gudveig Nielsen

24  ("Gudveig Nielsen") (hereafter collectively referred to as "Plaintiffs" or "the

25  Nielsens") allege as follows:

26

27

28

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

Filed By
Fax & File

                                                                    12237803.2
                        Complaint For Damages And Other Relief

1

2                        PARTIES AND CHARGING ALLEGATIONS

3

4          1.    Plaintiffs Andrew Nielsen and Gudveig Nielsen are husband and wife

5    residing in the State of California, County of Napa.  Plaintiffs are "Elderly Persons"

6    as defined by the California Welfare and Institutions Code, and at relevant times

7    have suffered from certain disabilities and limitations rendering them especially

8    vulnerable to defendants' conduct hereafter alleged.

9

10         2.    Plaintiffs are informed and believe and thereon allege:  (1) that

11   defendant Stewart J. Burch ("Burch") is an individual residing in the State of

12   California, County of Napa; (2) and that defendant Capital Business Service, Inc.

13   ("CBS") is a corporation duly organized and existing under the laws of the State of

14   California with its principal California office located in the County of Napa.

15   Plaintiffs further allege that defendants Burch and CBS are alter egos of each other

16   such that each is fully responsible for the acts and omissions of the other.

17

18         3.    Plaintiffs are informed and believe and thereon allege that defendant

19   Tracy Visher ("Visher") is an individual residing in the State of Nevada, and that

20   defendant Visher participated in the certain of the acts hereinafter described while

21   physically present in the State of California, County of Napa, and that she

22   otherwise has submitted herself to this jurisdiction and venue.

23

24         4.    Plaintiffs are informed and believe and thereon allege that defendant

25   Bordeaux Limousine Service ("Bordeaux") is a corporation duly organized and

26   existing under the laws of the State of California, and that at relevant times herein,

27   Bordeaux has done business in the State of California with its principal California

28   office located in the County of Napa.

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

                                        - 2 -                              12237803.2

5.    Plaintiffs are ignorant of the true names and capacities, whether individual, corporate, partnership, associate or otherwise, of defendants DOES ONE through TWENTY inclusive (the "Doe Defendants") and have therefore sued them under fictitious names.  Plaintiffs allege on information and belief that each of the Doe Defendants is legally responsible and liable in some manner for the events and happenings alleged herein.  Reference to the term "defendants" hereinafter shall include the named defendants and the Doe Defendants unless otherwise indicated.

6.    Plaintiffs allege on information and belief that at all relevant times herein mentioned each of the defendants was the agent, employee, controlling or controlled person, aider, abettor, successor, predecessor, principal and/or alter ego, or co-conspirator with, of some or all of the other defendants, and that in connection with the acts, practices, omissions and breaches set forth below, was acting within the scope of such relationships.  Notwithstanding the foregoing, to the extent that the relationship of any defendant to any other defendant would have the legal effect of exonerating either defendant from liability to Plaintiffs, such relationship is to that extent alone not specifically alleged.

## II

## BACKGROUND ALLEGATIONS

7.    Beginning in or about 1991 and continuing through the present, the Nielsens, who are unsophisticated in income tax and financial matters, encountered significant tax problems and issues with the Internal Revenue Service ("IRS") and Franchise Tax Board ("FTB") as a result of a series of unfortunate circumstances which befell them.  These problems and issues were of great concern to Plaintiffs who, at all relevant times, were anxious to resolve them but in need of professional assistance to do so.  In or about December 1999, Plaintiffs' were referred to

- 3 -

12237803.2

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

1    Defendant Burch by the resident manager of the Napa office of a large national

2    brokerage firm.  Plaintiffs understood that Burch was qualified to advise them with

3    respect to tax, accounting and financial matters.  At that time, defendants Burch

4    and CBS held themselves out as experts "specializing in tax solutions" and

5    defendant Burch was, or claimed to be, an Accredited Tax Advisor and an Enrolled

6    Agent expressly authorized to practice as a tax specialist before the IRS and FTB.

7

8        8.    On December 14, 1999, Plaintiffs met with defendant Burch and CBS

9    and retained Burch and CBS to represent Plaintiffs.  In that regard, Plaintiffs were

10   requested to and did execute Powers of Attorney authorizing said defendants to

11   represent Plaintiffs.

12

13       9.    On the following day, December 15, 1999, Plaintiffs met with

14   defendants Burch and CBS for several hours.  During that meeting, Plaintiffs

15   provided Burch and CBS with extensive and detailed private and personal

16   information regarding their life histories, the issues and problems that had

17   developed with the IRS and FTB, their physical histories and disabilities and other

18   matters.  During that meeting, Burch specifically asked Plaintiffs to disclose to him

19   extensive details about their assets, properties, financial circumstances and

20   possessions, which private information Plaintiffs provided.  Among other things,

21   Plaintiffs told Burch that they intended to sell their Napa home within a year and

22   retire in San Francisco.  Toward the end of the meeting, Burch told Plaintiffs that he

23   would be pleased to represent them and intended to put all of his other clients "on

24   hold" in order to do so.  From and after December 14, 1999, Plaintiffs imposed

25   their total trust and confidence in defendants Burch and CBS and relied fully and

26   entirely upon Burch's judgment, advice, assurances and representations.

27

28       10.   During the remainder of December 1999 and January 2000, Plaintiffs

- 4 -

12237803.2

Complaint For Damages And Other Relief

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

1    were in virtual daily contact with defendant Burch regarding their tax and financial

2    circumstances.  Pursuant to defendant Burch's instructions, Plaintiffs devoted

3    extensive efforts to assembling and providing information and data, including

4    extensive personal and financial data, to said defendant.  By the end of January

5    2000 defendant Burch had established himself as Plaintiffs' primary advisor,

6    particularly with regard to matters concerning Plaintiffs' finances and taxes.

7    Plaintiffs trusted and relied on him completely.

8

9        11.    During the afternoon of Saturday, January 29, 2000, defendant Burch

10   telephoned Plaintiffs at their home.  Burch asked Plaintiffs to loan him five thousand

11   dollars ($5,000) ostensibly because his other clients were not current on their

12   accounts and he had month-end payroll expenses to meet.  Plaintiffs agreed to do

13   so.  Burch said he would come over to Plaintiffs' home "within 15 minutes" to pick

14   up the check.

15

16       12.    Upon defendant Burch's arrival at Plaintiffs' home, defendant Burch

17   told Plaintiffs that this would be a "perfect opportunity" for him to tour Plaintiffs'

18   home and personally assess Plaintiffs' worth.  As stated above, Plaintiffs had

19   previously advised said defendant of their intent to sell their Napa home during the

20   following year, primarily because they were physically unable to maintain the home

21   and were concerned regarding their financial and tax situation and desirous of

22   preserving their retirement nest egg.  Plaintiffs' Napa property includes, in addition

23   to their home, a Carriage House, which defendant Burch also asked to tour.  Burch

24   had previously told Plaintiffs that he operated a car rental business on the side, and

25   owned a limousine and 1982 Silver Spur Rolls Royce (the "1982 Rolls Royce") that

26   he periodically rented out or leased.  Burch remarked that "ten limousines" could

27   easily fit in the Carriage House.

28

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

- 5 -                                    12237803.2

13.   On Friday, February 4, 2000, Andrew Nielsen's birthday, Andrew Nielsen delivered to defendant Burch at his office some recently received mail regarding the Nielsens' taxes.  Earlier, the Nielsens had made dinner reservations for that evening to celebrate Andrew Nielsen's birthday.  Defendant Burch asked Andrew Nielsen how he intended to spend the evening and, upon learning of Plaintiffs' plans, repeatedly insisted that he (Burch) drive the Nielsens to dinner in his limousine.  Ultimately, Andrew Nielsen agreed, and the Nielsens dined with defendant Burch and his wife Lory, at the Nielsens' expense.

14.   Throughout February and March, 2000, defendant Burch continued to be in regular contact with Plaintiffs regarding Plaintiffs' tax and financial issues.  During that period, said defendant began to use his fiduciary position as a trusted tax and financial advisor to Plaintiffs to induce Plaintiffs to consider loaning him several hundred thousand dollars ostensibly to enable him to fund a limousine business that he intended to form with several investors.  Plaintiffs declined to provide financial assistance to Burch at that time and in fact, on April 4, 2000, specifically informed him that they did not want to use their retirement money to support any limousine business.  However, at Burch's urging and insistence, Plaintiffs did agree that Burch could temporarily store limousines in their Carriage House.

15.   On May 3, 2000, Plaintiffs again met with defendant Burch in his CBS office to discuss their tax and financial matters.  At the end of the meeting, defendant Burch asked Plaintiffs if they would join him for lunch.  At lunch, Burch told Plaintiffs that he had reformulated his plans for a limousine business.  He told Plaintiffs that a number of other potential investors were considering investing up to $50,000 each in the business, but that he wanted to afford this exceptional business opportunity to Plaintiffs alone.  He told Plaintiffs that they would "be

12237803.2

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

1  given" 25,000 shares of stock in the corporation he was forming if they would

2  simply make a $450,000 loan to him to help fund the startup of the enterprise.

3  Among other things, defendant Burch also represented to Plaintiffs:

4

5         a.     That only Plaintiffs, defendant Burch and defendant Visher (who

6  Burch had previously described to Plaintiffs as a long-time friend and client of his

7  who shared his interest in pursuing a limousine business) would receive corporate

8  stock;

9

10         b.     That Plaintiffs (who specifically expressed  concern that they did

11  not have sufficient funds available to make a large loan) could and should take out

12  a separate loan against their Napa home to provide the necessary funding; and

13

14         c.     That he had been successful in obtaining a removal of

15  significant penalties that had accrued on Plaintiffs' income taxes and that Plaintiffs

16  therefore had some cash available that could be used for the limousine business.

17

18        16.    On the following evening, Thursday, May 4, 2000, defendant Burch

19  came to Plaintiffs' home.  He reiterated that Plaintiffs were financially capable of

20  putting $450,000 into his limousine business and stated, among other things, that

21  this would be a good use of their money.  He told Plaintiffs that a portion of the

22  funds would initially be used by the limousine business to purchase four exclusive

23  DaBryan coaches and showed Plaintiffs photographs of the vehicles.  He also told

24  Plaintiffs that he could readily make arrangements with Investors' Trust Company

25  to obtain a loan for Plaintiffs secured by Plaintiffs' home, but that he needed

26  Plaintiffs to commit promptly to provide the requested funding to the enterprise

27  because the first DaBryan coaches were about to be purchased.  Burch pressured

28  plaintiffs into committing to loan him $450,000 and Plaintiffs ultimately agreed that

- 7 -

12237803.2

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

they would do so.

17.    On May 9, 2000, defendant Burch again contacted Plaintiffs and told Plaintiffs that he had proceeded to order two DaBryan coaches.  He also requested that Plaintiffs provide him with an interim loan of $10,000 as a down payment on those coaches and proceed immediately to obtain the loan for the remaining promised funds.  He also told Plaintiffs that his business was going to require Plaintiffs to afford him use of their Carriage House and that he intended promptly to install a telephone system and make other renovations to accommodate the operations of the enterprise.

18.    In response to defendant Burch's relentless pressure, Plaintiffs acceded to all of his demands.  They were never, however, fully informed, and never fully understood, the details of the transaction or the potential risks and consequences thereof.  Specifically, Plaintiffs committed to obtain a $450,000 loan against their Napa home to fund defendants' limousine business and proceeded at defendants' insistence to obtain that funding notwithstanding that by doing so their financial future and retirement nest egg would be severely jeopardized.  Plaintiffs advanced the borrowed funds to defendants.

19.    In addition to wrongfully inducing Plaintiffs to borrow money against their home and transfer $450,000 for their collective benefit, defendants, acting individually and through their authorized representatives, employees and agents, committed actual fraud on Plaintiffs in that, among other things, defendants in words or in substance:

a.    made the following additional false representations to Plaintiffs:

- 8 -

Complaint For Damages And Other Relief

(1)    that Plaintiffs would "be given" 25,000 shares in defendant Bordeaux (one-third of the Company) if they loaned $450,000 to defendants;

(2)    that Plaintiffs would have full access to Bordeaux's books and records, access to which has in fact since been continuously denied;

(3)    that Plaintiffs would have an active defined role in the business, including acting as primary representatives of Bordeaux at key events at Bordeaux's expense;

(4)    that only the highest quality DaBryan coaches (four of them at the outset) would be purchased or used by Bordeaux;

(5)    that the corporation would conserve costs by, among other things, using defendant Burch and Plaintiff Andrew Nielsen as primary drivers; and

(6)    that defendants had several other investors ready and willing to, and desirous of, investing in Bordeaux.

b.    concealed from Plaintiffs, among several other matters, material facts regarding the following:

(1)    defendants' actual intent to take wrongful advantage of Plaintiffs for their own individual and collective benefit;

(2)    Burch's actual intent to use Bordeaux's vehicles for his

- 9 -

12237803.2

Complaint For Damages And Other Relief

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

1  own personal use, and otherwise misappropriate assets acquired with Plaintiffs'

2  monies;

3

4  (3)  the substantial economic risks associated with Plaintiffs'

5  provision of funds to defendants, including the inadequacy of security for

6  repayment;

7

8  (4)  the lack of suitability of Plaintiffs "investment" in

9  Bordeaux in light of their age, physical condition, financial condition and other

10  circumstances;

11

12  (5)  the nature and extent of, and details regarding

13  defendants' own "investment" in and/or equity contribution to Bordeaux, including

14  the facts that:  (a) defendants Burch and Visher caused to be issued to each of

15  themselves equal stock ownership in Bordeaux to that received by Plaintiffs

16  (thereby establishing themselves as majority and controlling shareholders) without

17  contributing proportionate capital or assuming equivalent economic risks as did

18  Plaintiffs; and (b) that defendant Burch intended to contribute the 1982 Rolls Royce

19  as his purported $40,000 equity investment notwithstanding the fact that the

20  actual market value of that vehicle is less than half that amount; and

21

22  (6)  that defendants Burch and Visher intended otherwise to

23  use their controlling interest in Bordeaux for their personal benefit and to Plaintiffs'

24  detriment.

25

26  20.  Several of Defendants' representations and promises, including

27  representations set forth in paragraph 15 and 19a above were material, were

28  known by defendants to be false when made and were made with intent to induce

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

- 10 -

12237803.2

Complaint For Damages And Other Relief

1  Plaintiffs under false pretenses, among other things, to transfer a material portion
2  of their retirement nest egg to defendants.  Plaintiffs believed the truth of the
3  assurances, promises and representations made to them, relied thereon and
4  suffered damages as a result of such reliance as more particularly described
5  hereafter.

6

7      21.    The material facts concealed from Plaintiffs, including facts regarding
8  subject matters identified in paragraph 19b above, were intentionally and knowingly
9  concealed by defendants.  Plaintiffs were unaware of the true facts and relied upon
10 the good faith of defendants, their trust in their financial and tax advisor and the
11 expectation that the information provided to them was complete and accurate.
12 Plaintiffs suffered damages as a result of their reliance on such matters.
13 Defendants were under legal and fiduciary duties to disclose all material facts to
14 Plaintiffs, not to conceal any material information from Plaintiffs, not to take
15 advantage of Plaintiffs and not to defraud and deceive Plaintiffs in any respect.
16

17     22.    Moreover, after defendants had successfully obtained $450,000 from
18 Plaintiffs, defendants Burch and CBS failed and refused thereafter to fulfill the
19 obligations they had initially undertaken, and had promised to undertake, to perform
20 and complete tax related services for Plaintiffs.  This abrogation of professional
21 responsibilities has further contributed to Plaintiffs' emotional distress and has
22 exposed Plaintiffs to additional risks, damages and losses.

23

24                           FIRST CAUSE OF ACTION

25           (For Breach of Fiduciary Duty, Breach of Confidence and
26                  Constructive Fraud Against All Defendants)

27     23.    Plaintiffs incorporate herein by reference each and every allegation
28 contained in paragraphs 1 through 22, above.

- 11 -

12237803.2

Complaint For Damages And Other Relief

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

24.    At all relevant times herein, Defendants Burch, CBS and the Doe Defendants stood in positions of trust and confidence with respect to Plaintiffs and owed Plaintiffs the duties of fiduciary, including but not limited to the duties of due care, loyalty, fidelity and good faith, as well as the duty to act in a manner that first and foremost promoted the interests of Plaintiffs.

25.    Defendants Visher and Bordeaux, each of whom who acted in concert with and/or participated with any of the fiduciary defendants, or ratified the conduct thereof, became charged under law with equivalent fiduciary duties and obligations with respect to Plaintiffs.

26.    Defendants breached their foregoing duties to Plaintiffs by, among other things, committing the acts or by virtue of the omissions set forth above. Defendants' conduct also constitutes constructive fraud upon Plaintiffs; and thus entitles Plaintiffs, in addition to all other relief, to the imposition of such interim or permanent constructive or other trusts, injunctive relief and accountings as may be necessary or appropriate to protect the rights, assets and interests of Plaintiffs.

27.    As a direct and proximate result of the foregoing, Plaintiffs have been damaged as more particularly set forth in the prayer of this Complaint.

28.    Plaintiffs are informed and believe and on that ground allege that the acts, omissions and concealments of defendants identified above were intentional, and were undertaken with malice and oppression and/or a conscious and reckless disregard for Plaintiffs' rights.  Such conduct thus constitutes despicable conduct and Plaintiffs are entitled to recover punitive and exemplary damages in an amount according to proof.

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

12237803.2

1

## SECOND CAUSE OF ACTION

2

**(For Fraud Against All Defendants)**

3

4        29.    Plaintiffs incorporate herein by reference each and every allegation

5    contained in paragraphs 1 through 28, above.

6

7        30.    Defendants committed actual fraud by knowingly making the

8    misrepresentations set forth above, by concealing material facts from Plaintiffs,

9    and/or by ratifying or aiding the conduct of other defendants engaged in such fraud.

10

11        31.    As a direct and proximate result of the foregoing, Plaintiffs have been

12    damaged as more particularly set forth in the prayer of this Complaint.

13

14        32.    Plaintiffs are informed and believe and on that ground allege that the

15    acts, omissions and concealments of Defendants identified above were intentional,

16    and were undertaken with malice and oppression and/or with a conscious and

17    reckless disregard for Plaintiffs' rights.  Such conduct thus constitutes despicable

18    conduct and Plaintiffs are entitled to recover punitive and exemplary damages in an

19    amount according to proof.

20

21        ## THIRD CAUSE OF ACTION

22

**(For Fiduciary Abuse Against All Defendants)**

23

24        33.    Plaintiffs incorporate herein by reference each and every allegation

25    contained in paragraphs 1 through 32, above.

26

27        34.    Plaintiffs are informed and believe, and thereon allege, that

28    defendants' conduct constitutes fiduciary abuse under common law and under the

- 13 -                                               12237803.2

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

1  provisions of the Welfare and Institutions Code of the State of California,

2  §§ 15600, et seq.

3

4      35.   As a direct and proximate result of the foregoing, Plaintiffs have been

5  damaged as more particularly set forth in the prayer of this Complaint.

6

7      36.   Plaintiffs are informed and believe and on that ground allege that the

8  acts, omissions and concealments of Defendants identified above were intentional

9  and were undertaken with malice and oppression and/or with a conscious and

10  reckless disregard for Plaintiffs' rights.  Such conduct thus constitutes despicable

11  conduct and Plaintiffs are entitled to recover punitive and exemplary damages in an

12  amount according to proof.

13

14              **FOURTH CAUSE OF ACTION**

15          **(For Conversion Against All Defendants)**

16

17      37.   Plaintiffs incorporate herein by reference each and every allegation

18  contained in paragraphs 1 through 36, above.

19

20      38.   Defendants converted Plaintiffs' assets, property and monies to their

21  own use and benefit, thereby depriving Plaintiffs of the full and unencumbered

22  benefit thereof.  Defendants have not returned to Plaintiffs the assets, property and

23  monies converted by them, or the value thereof.

24

25      39.   As a direct and proximate result of the foregoing, Plaintiffs have been

26  damaged as more particularly set forth in the prayer of this Complaint.

27

28      40.   Plaintiffs are informed and believe and on that ground allege that the

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

- 14 -

12237803.2

Complaint For Damages And Other Relief

1    acts, omissions and concealments of defendants identified above were intentional,

2    and were undertaken with malice and oppression and/or with a conscious and

3    reckless disregard for Plaintiffs' rights. Such conduct thus constitutes despicable

4    conduct and Plaintiffs are entitled to recover punitive and exemplary damages in an

5    amount according to proof.

6

7                          **FIFTH CAUSE OF ACTION**

8    **(For Rescission Pursuant to Civil Code Section 1689 Against All Defendants)**

9

10          41.    Plaintiffs incorporate herein by reference each and every allegation

11    contained in paragraphs 1 through 40, above.

12

13          42.    Plaintiffs' consent to provide funds to or for the benefit of defendants

14    was obtained as a result of defendants' fraud and breach of duties as described

15    hereinabove and/or as a result of material mistakes sufficient to enable Plaintiffs, as

16    a matter of law, to rescind such transaction.

17

18          43.    Moreover, as a result of the misrepresentations, omissions, breaches

19    of duties and other acts and conduct of defendants, the consideration to be

20    received by Plaintiffs has failed in material respects.

21

22          44.    As a result of the foregoing, Plaintiffs are entitled to rescission of the

23    referenced transactions, and an order requiring defendants (a) to restore to Plaintiffs

24    all of the consideration with which Plaintiffs parted and (b) to cancel and/or assume

25    all outstanding indebtedness and liabilities incurred by Plaintiffs as a result of

26    entering into the referenced transactions, and a further order awarding to Plaintiffs

27    such additional consequential damages as may be proved at trial.

28

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

- 15 -

12237803.2

45.    Plaintiffs hereby provide notice of rescission to defendants and offer to restore any consideration received from defendants (including any shareholder interest in Bordeaux) on the condition that defendants do likewise and the equities among the parties are otherwise properly adjusted.

46.    As a direct and proximate result of the foregoing, Plaintiffs have been damaged as more particularly set forth in the prayer of this Complaint.

47.    Plaintiffs are informed and believe and on that ground allege that the acts, omissions and concealments of defendants identified above were intentional, and were undertaken with malice, oppression and/or a conscious and reckless disregard for Plaintiffs' rights. Such conduct thus constitutes despicable conduct and Plaintiffs are entitled to recover punitive and exemplary damages in an amount according to proof.

### SIXTH CAUSE OF ACTION

**(For Violation of § 25401 of the California Corporation Code Against All Defendants)**

48.    Plaintiffs incorporate herein by reference each and every allegation contained in paragraphs 1 through 47, above.

49.    The foregoing acts and conduct of defendants constitute: (a) the making of untrue statements of material facts; and/or (b) omissions to state material facts necessary in order to make the statements made in light of the circumstances under which they were made not misleading. Such conduct occurred in connection with a purchase and sale of securities within California, in violation of the duties owed Plaintiffs under § 25401 of the California Corporations Code.

- 16 -

12237803.2

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

50.    Defendants are jointly and severally liable to Plaintiffs on one or more of the following grounds:  (a) as control persons of another defendant (§ 15504.3); (b) as agents materially aiding the acts or transactions constituting the foregoing violations (§ 15504); and/or (c) as a person materially assisting such violations (§ 15504.1).

51.    As a direct and proximate result of the foregoing, Plaintiffs have been damaged as more particularly set forth in the prayer of this Complaint.  Plaintiffs are entitled, in addition to other relief, to the remedies set forth in § 25501 of the California Corporations Code.

## SEVENTH CAUSE OF ACTION

### (For Professional Negligence Against Defendants Burch and CBS)

52.    Plaintiffs incorporate herein by reference each and every allegation contained in paragraphs 1 through 51, above.

53.    Plaintiffs are informed and believe, and thereon allege that the failure and refusal of Defendants Burch and CBS to fulfill the promises, agreements, responsibilities they undertook to assist Plaintiffs in connection with their tax related problems constitutes a breach of the professional and fiduciary duties owed to Plaintiffs by said defendants.

54.    Plaintiffs are further informed and believe, and thereon allege that the manner in which said defendants undertook and performed professional services for Plaintiffs failed to meet the standard of care for performance of such duties by accredited tax advisors, enrolled agents, financial advisors and fiduciaries.

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

- 17 -

12237803.2

55.    As a direct and proximate result of the foregoing, Plaintiffs have been damaged as more particularly set forth in the prayer of this Complaint.

### EIGHTH CAUSE OF ACTION

**(For Intentional Infliction of Emotional Distress
Against All Defendants)**

56.    Plaintiffs incorporate herein by reference each and every allegation contained in paragraphs 1 through 55, above.

57.    At all relevant times a special relationship existed between Plaintiffs and defendants as described above.

58.    Defendants knew or had reason to know that Plaintiffs would be susceptible to emotional harm from defendants' conduct.

59.    Defendants' conduct was intentional and malicious, and defendants knew or should have known that such conduct would cause Plaintiffs mental anguish and emotional distress, particularly in light of the age, physical condition, financial condition and vulnerability of Plaintiffs.

60.    Each defendant ratified and confirmed the conduct of each other defendant by accepting the benefits of such conduct or otherwise affirming such conduct, and is therefore jointly and severally liable for the resulting damages.

61.    As a direct and proximate result of the foregoing, Plaintiffs have suffered mental anguish and emotional distress and have been damaged as more particularly set forth in the prayer of this Complaint.

12237803.2

Complaint For Damages And Other Relief

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

1    62.    Plaintiffs are informed and believe and on that ground allege that the

2    acts, omissions and concealments of Defendants identified above were intentional

3    and were undertaken with malice, oppression and/or a conscious and reckless

4    disregard for Plaintiffs' rights.  Such conduct thus constitutes despicable conduct

5    and Plaintiffs are entitled to recover punitive and exemplary damages in an amount

6    according to proof.

7

8    ### NINTH CAUSE OF ACTION

9    **(For Civil Conspiracy Against All Defendants)**

10

11    63.    Plaintiffs incorporate herein by reference each and every allegation

12    contained in paragraphs 1 through 62, above.

13

14    64.    Plaintiffs are informed and believe and thereon allege that the

15    aforementioned acts and omissions of and among defendants constitute a civil

16    conspiracy to commit the torts set forth in Plaintiffs' First through Fourth, Sixth and

17    Eighth Causes of Action.  Each of the defendants committed at least one overt act

18    in furtherance of that conspiracy, and is therefore fully liable to Plaintiffs for all

19    compensatory and punitive damages resulting from any of said torts.

20

21    65.    As a direct and proximate result of the foregoing, Plaintiffs have been

22    damaged as more particularly set forth in the prayer of this Complaint.

23

24    ### PRAYER FOR RELIEF

25

26    WHEREFORE, Plaintiffs pray for judgment against defendants and each

27    of them as follows:

28

- 19 -

12237803.2

Complaint For Damages And Other Relief

a.    For compensatory damages in an amount according to proof but not less than Five Hundred Thousand Dollars ($500,000) including but not limited to all actual and/or out-of-pocket expenses, costs, damages and losses suffered and incurred or to be suffered and incurred by Plaintiffs, all lost income, profits and earnings resulting from the acts and omissions alleged in this Complaint and all other recoverable special damages, general damages and consequential damages that may be proved at trial;

b.    For exemplary damages in an amount according to proof;

c.    For interest on all recoverable damages at the highest legal rate from the earliest possible date;

d.    For attorneys' fees and costs incurred in connection with this action to the fullest extent permitted by law;

e.    For such additional statutory penalties, if any, as may be authorized by law;

f.    For the imposition of such interim and permanent constructive, resulting or other trusts, equitable liens, or other relief as may be necessary or appropriate to protect the interests of Plaintiffs during the pendency of this action and thereafter, including without limitation the imposition of a constructive and/or resulting trust, as may be appropriate, for the benefit of Plaintiffs on all accounts, properties, projects, securities, enterprises, assets and entities, under the control, influence or representation of defendants, and/or in or to which any assets, funds or consideration received from Plaintiffs have ever been invested, diverted or applied;

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

- 20 -

12237803.2

Complaint For Damages And Other Relief

g.    Upon application by Plaintiffs, for such temporary restraining orders and preliminary and permanent injunctive relief as may be requested;

h.    For a true, complete, accurate, regular and current accounting and tracing of:  (a) all assets and monies turned over to defendants by or at the expense of Plaintiffs; (b) the exact nature and date of the disposition of all such assets and funds, including a true, complete, accurate and current statement of all interest and profits earned on said assets and funds; (c) a tracing of all uses of said assets and funds; and (d) all financial transactions involving defendant Bordeaux;

i.    For a true, complete, accurate, regular and current accounting and tracing of all proceeds and profits generated from or earned Defendants, directly or indirectly, through defendant Bordeaux or any other persons or entities controlled or represented by defendants, and for such other accountings as may be appropriate, necessary or useful to protect the interests of Plaintiffs.

j.    For an order requiring that all accountings and tracings concerning matters set forth above be conducted according to generally accepted accounting principles, practices and procedures, by independent certified public accountants selected by Plaintiffs or the Court, at defendants' sole expense;

k.    For an order:  (1) rescinding all transactions between Plaintiffs and defendants; (2) requiring restitution by defendants to Plaintiffs of all monies, assets or other consideration transferred, conveyed or otherwise put into the hands of or under the control of defendants, and of all other benefits conferred on or received by defendants or obtained by them, together with all recoverable interest thereon; and (3) awarding additional damages sufficient to restore Plaintiffs to the position they were in prior to the transfer of such assets to defendants, together

- 21 -

12237803.2

CROSBY, HEAFEY, ROACH & MAY
PROFESSIONAL CORPORATION

1   with all recoverable interest thereon;

2

3          l.      For inclusion into the judgment in Plaintiffs' favor of such

4   findings of fact and conclusions of law as may be necessary or useful to assure

5   that such judgment is not and will not be dischargeable in any proceeding which

6   may be brought by any defendant under the Federal bankruptcy laws; and

7

8          m.      For such other and further relief as this Court deems just and

9   proper for Plaintiffs' benefit.

10

11          DATED:  June 5, 2001

12

13                                              CROSBY, HEAFEY, ROACH & MAY
14                                              Professional Corporation

15

16                                              By _____
                                                _____
17                                              John S. Siamas
                                                Attorneys for Plaintiffs
18                                              Andrew K. Nielsen and
                                                Gudveig Nielsen

19

20

21

22

23

24

25

26

27

28

- 22 -

Complaint For Damages And Other Relief

12237803.2

EXHIBIT C

07/17/2006  15:36  714-620-1256              ST PAUL TRAVELERS                    PAGE  13/28

**The St Paul**
Property and Liability Insurance

New Jersey
Liability-Claims
499 Thornall Street
Edison, NJ  08830
732.494.3800 Tel
732.494.5427 Fax
*Mailing address*
PO Box 203
Iselin, NJ 08830

## FILE

2/18/02

Stewart Burch                                        Certified Mail/Return Receipt
Capital Business Service, Inc
P.O. Box 2088
2033 First St.
Napa, California 94558

Re:  Insured: Capital Business Service
     Claim #: GL00622797 22h001
     Lawsuit captioned: Andrew K. Nielsen and Gudveig Neilsen, husband and wife,
     Plaintiff's, vs. Stewart Burch, an individual; Capital Business Service, Inc., a
     California corporation; Bordeaux Limousine Service, a California corporation;
     Tracy Visher, an individual; and Does One through Twenty, inclusive,
     defendants.

Dear Mr. Burch,

We formally acknowledge, on behalf of St. Paul Mercury Insurance Company ("St.
Paul"), receipt of the captioned lawsuit, tendered under the errors and omissions policy
issued to Capital Business Service, Inc.

Policy number GL00622797 provides Enrolled Agents Professional Liability coverage
for the period 05/23/01 to 05/23/02 to Capital Business Service, Inc. Limits of coverage
are as follows: Each Wrongful Act 1,000,000; General Total Limit 1,000,000. A 1,000
deductible is applicable to each wrongful act and each event.

In the above Complaint, there are allegations made against you, individually, and Capital
Business Service, Inc., which may be covered under the policy. However, certain
allegations would not be covered under the errors and omissions policy issued by St.
Paul. As there is a potential for coverage, and therefore a duty to defend, a defense will
be afforded subject to a reservation of St. Paul's right as set forth herein.

The gist of the Complaint involves a business venture in which the plaintiffs invested
money as partners. Much of the Complaint is directed at allegations as to the partnership
and the investment. The Complaint also includes allegations against you, personally, and
Capital Business Service Inc., in the Seventh Cause of Action for Professional
Negligence. It is alleged that the failure and refusal of defendants Stewart J. Burch and
Capital Business Service Inc., to fulfill the promises, agreements, responsibilities they

undertook to assist Plaintiff's in connection with their tax related problems constitutes a breach of their professional duties as a tax adviser and enrolled agent.

We have had an opportunity to evaluate your request for coverage for this matter under the St. Paul policy based upon the information that has been made available to date. Our coverage evaluation is based upon the allegations made by the plaintiff in this matter and the results of our investigation thus far. We realize that you may dispute the allegations in the Complaint. Please note that in referring to those allegations in this letter, St. Paul does not mean to imply that any of them are true. However, St. Paul must necessarily refer to these allegations in determining whether there are any coverage obligations to Stewart J. Burch and Capital Business Service, Inc., under the St. Paul policy.

Please refer to your policy, under applicable policy form P0361, which contains the following pertinent language:

## ENROLLED AGENTS PROFESSIONAL LIABILITY PROTECTION - CLAIMS-MADE

This insuring agreement provides professional liability protection for professional services performed by or for you. There are, of course, limitations and exclusions that apply to that protection. As a result, all protected persons should read this agreement carefully to determine the extent of coverage.

## What This Agreement Covers

**Enrolled agents liability.** We'll pay amounts any protected person is legally required to pay as damages for covered loss that:
- results from the performance of professional services; and
- is caused by a wrongful act committed before this agreement ends.

*Protected person* means any person or organization who qualifies as a protected person under the Who Is Protected Under This Agreement section.

*Damages* means judgments, awards, and settlements. It does not include civil or criminal fines, sanctions, penalties, or forfeitures.

*Professional services* means those professional services performed by or on behalf of a protected person in any of the following capacities:
- Enrolled agent, bookkeeper, or tax preparer.
- Notary public.

*Enrolled agent, bookkeeper, or tax preparer* means a protected person who:
- prepares tax returns;
- files tax returns; provides tax proceeding representation;
- compiles, prepares, or assembles financial

data statements in accordance with:

- Generally Accepted Accounting Principles;
- Generally Accepted Tax Accounting Principles;
- Internal Revenue Service Tax Code Guidelines; or
- Other Comprehensive Basis of Accounting;

- assists in the maintenance and preparation of financial records, including the posting of receipts, disbursements, and adjustments in the accounting records;
- reconciles accounting activity to subsidiary records;
- reviews documents for accuracy and coding;
- maintains fixed asset records;
- maintains payroll registers, records employees earnings, and prepares payroll checks for your clients;
- reviews invoices or statements of account on behalf of your clients and prepares for
- the payment of such items with client funds, but not including the signing of checks; or services, consults, orders, delivers, installs, and trains in the use of computer hardware, software, and related supplies for your clients.

*Wrongful act* means an error, omission, negligent act, advertising injury, or personal injury.

*Advertising injury* means injury that's caused by the unauthorized use of any advertising idea, material, slogan, style or title of others in your advertising.

*Personal injury* means injury that's caused by any of the following offenses:
- False arrest, detention or imprisonment.
- Malicious prosecution.
- Wrongful entry into, or wrongful eviction from a room, dwelling, or premises that a person occupies.
- Invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies.
- Libel or slander.
- Making known to any person or organization written or spoken material that disparages the products, work or completed work of others.
- Making known to any person or organization written or spoken material that violates a person's right of privacy.

**Right and duty to defend a protected person.**
We'll have the right and duty to defend any protected person against a claim or suit for loss covered by this agreement. We'll have such right and duty even if all of the allegations of the claim or suit are groundless, false, or fraudulent. But we won't have a duty to perform other acts or services.

We'll have the right to investigate any claim or suit to the extent that we believe is proper. We'll also have the right to settle any claim or suit within:
- any applicable deductible; or
- the available limits of coverage.

Our duty to defend protected persons ends when we have used up the limits of coverage that apply with the payment of judgments or settlements.

However, we won't agree to the final settlement of any claim or suit without your written consent. But if you refuse to give us your consent, we won't pay more than we would have paid had you consented to the proposed settlement

*Claim* means a demand that seeks monetary damages.

*Suit* means a civil proceeding that seeks monetary damages. It includes: an arbitration proceeding for such monetary damages to which the protected person must submit, or submits with our consent; and any other alternative dispute resolution proceeding for such monetary damages to which the protected person submits with our consent.

**Right to appeal a judgment against a protected person.** We'll have the right to appeal a judgment awarded in a suit for any wrongful act covered by this agreement if:
- we defend a protected person against the suit; and
- the judgment is awarded against that protected person.

If we appeal such a judgment, we'll pay all expenses, which result directly from that appeal, including post judgment interest and cost of appeal bonds. Such appeal expenses are in addition to the limits of coverage. However, the results of an appeal won't change the limits of coverage that apply under this agreement.

**Who Is Protected Under This Agreement.**

**Corporation or other organization.** If you are shown in the Introduction as a named insured and a corporation or an other organization, you are a protected person. Your directors and executive officers are protected persons only for the conduct of your professional services. And your stockholders and former stockholders are protected persons only for their liability as your stockholders.

*Other organization* means an organization other than a corporation, partnership, joint venture, or a limited liability company.

*Executive officer* means any person holding an officer position created by the charter, constitution, by-laws, or other similar governing document of a corporation or other organization.

**Employees.** Your employees, including temporary employees, are protected persons only for work performed within the scope of their employment by you.

**Independent contractors.** Independent contractors you hire are protected persons only for work performed within the scope of their duties for you.

## Exclusions - What This Agreement Won't Cover

**Check signing.** We won't cover loss that results from any protected person's signature on any check, draft, or similar negotiable instrument.

**Contract liability.** We won't cover loss for which the protected person assumed liability under any contract.

However, we won't apply this exclusion to amounts that the protected person would be legally required to pay without the contract.

**Criminal, dishonest, fraudulent, or intentionally wrongful acts or omissions.** We won't cover loss that results from any criminal, dishonest, fraudulent, or intentionally wrongful act or omission committed by any protected person.

**Fiduciary activities.** We won't cover loss that results from any protected person's activities as a fiduciary.

*Fiduciary* means serving as a trustee, conservator, executor, guardian, or receiver.

**Injury or damage.** We won't cover: bodily injury; or property damage.

*Bodily injury* means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness, or disease:

- Mental anguish, injury, or illness.
- Emotional distress.
- Care, loss of services, or death.

*Property damage* means:

- physical damage to tangible property of others, including all resulting loss of use of that property; or
- loss of use of tangible property of others that isn't physically damaged.

**Investment of funds.** We won't cover loss that results from the failure of any investment to perform as expected or as represented.

**Known wrongful acts.** We won't cover loss that results from any wrongful act any protected person:

- knew about before the beginning date of this agreement; and
- could reasonably foresee would result in a claim or suit being made or brought.

**Securities.** We won't cover loss that results from the sale of securities or any violation of:

- The Investment Company Act of 1940, as amended;
- The Securities Act of 1933, as amended;
- The Securities Exchange Act of 1934, as amended;
- any state Blue Sky or Securities law; or any similar state of federal statute or regulation.

**Specified services.** We won't cover loss that results from:

- the preparation, analysis, or verification of any audited financial statement; or
- services performed by or on behalf of any protected person in their capacity as an attorney; or
- the preparation of financial review statements.

There is a potential for coverage under the St. Paul policy to the claims asserted against Stewart J. Burch and Capital Business Service, Inc. as allegations against these defendants have been made that potentially involve wrongful acts as an enrolled agent. However, the claims asserted against you may not be covered if they do not involve wrongful acts as an enrolled agent. Most of the allegations please in the Complaint fall within this category. Further, certain claims are specifically excluded from coverage.

Stewart J. Burch is a protected person only to the extent that his actions were professional services done on behalf of Capital Business Service, Inc., as set forth above. Liability imposed for acts outside of the scope of the coverage provided by the policy would not be covered.

Additional, certain allegations against Stewart J. Burch and Capital Business Service, Inc. are specifically excluded by the policy as set forth above. It is against public policy in California for an insurance carrier to indemnify an insured for conduct of an intentional or willful nature. The policy specifically excludes coverage for dishonest or fraudulent acts. It is further against public policy in California for an insurer to indemnify for punitive or exemplary damages. Certain damages sought are not compensatory damages and there is no coverage for restitution and or disgorgement of profits and/or injunctive relief.

St. Paul will provide Stewart J. Burch and Capital Business Service, Inc., with a defense to the suit, subject to a complete reservation of rights, in view of the potential for coverage for some of the claims asserted. As we discussed, we will agree to your continued representation by the Gaw, Van Male, Smith, Myers & Miroglio law firm. In view of the reservation of rights, you have the right to be represented by counsel of you choice, subject to the requirements of California Civil Code Section 2860. We ask that

your selected independent counsel provide us with proof as to its experience in defense of similar litigation, and also verification that it maintains errors and omissions insurance in compliance with that requirement. We have approved a rate up to $140 per hour for partner for your selected counsel.

Under existing California law, St. Paul can reserve its rights to recover from the insured defendants all defense costs incurred on non-covered claims after the conclusion of this litigation. In lieu of this, we have agreed with you to pay 25% of your reasonable defense costs for the total action. This means we will pay at the agreed upon rate for your defense costs to the entire action, and are hereby waiving our rights to seek a future apportionment of defense costs between covered and non-covered claims. This agreement applies to those expenses from the date you tendered the defense of this mater to us on 6/13/01. Please note this apportionment agreement is with respect to defense only and does not apply at all to any issue of indemnification of any settlement or damages awarded in this matter.

St. Paul will indemnify Stewart J. Burch and Capital Business Service, Inc. for any covered damages, but will not pay for any non-covered damages the plaintiffs may receive in this matter. We do reserve the right to seek a judicial determination of what, if any, obligations St. Paul may have as to indemnity.

As indicated above, the St. Paul position is based upon the facts that have been made available to us to date. We reserve the right to modify our position if the information developed during our investigation and monitoring of this claim warrants modification. Please advise us if you have any information which you believe will affect our determination concerning the coverage available under the St. Paul policy.

Nothing contained in this letter should be deemed a waiver of the terms and conditions of the St. Paul policy, nor shall any acts or positions taken by the St. Paul be construed as creating an estoppel against the St. Paul for matters presently known or unknown. St. Paul expressly reserves the right to rely upon any term or condition of the contract or any other ground, which may be found to limit or preclude coverage.

If you have any questions about this coverage determination, please feel free to contact the undersigned to discuss the details more fully. I can be reached at 1-800-272-1088 ext. 292.

I look forward to working with you on this matter.

Sincerely,

Joseph Bilella
Claim Specialist
Professional Specialties

CC: Placer Insurance Agency

The St.Paul

agreement, $1,000,000 Policy B and $3,000,000 Policy C.

*Contribution by limits.* If any of the other insurance doesn't permit contribution by equal shares, we'll pay that portion of the damages that is equal to our percentage of the total of all limits that apply. But we won't pay more than the limits of coverage that apply under this agreement. For example:

You are required by a court to pay damages of $6,000,000. Besides this agreement, another policy applies to the judgment. The limit of this agreement is $3,000,000 and Policy B has a $1,000,000 limit. The total limit of all insurance is $4,000,000.

Our limit is 75% (3,000,000/4,000,000) of the total limit. But we won't pay 75% of the judgment because that $4,500,000 share is more than our limit, which is $3,000,000.

001029